IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NANCY A. WILLIAMS                    *

            Plaintiff        *

         vs.                 *    CIVIL ACTION NO. MJG-13-1942

GENEX SERVICES, INC.                 *

           Defendant        *

*       *       *       *       *       *       *       *       *

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant GENEX Services, Inc.'s
Motion for Summary Judgment with Regard to the Claims of
Plaintiff Nancy A. Williams [Document 14] and the materials
submitted relating thereto.  The Court finds a hearing
unnecessary.


I.   BACKGROUND

Defendant GENEX Services, Inc. ("GENEX") has been, at all
times relevant hereto, a provider of integrated managed care
services.  In 2011, Plaintiff Nancy A. Williams ("Williams"), a
registered nurse, began her employment with GENEX as a field
medical case manager.  Since then, Williams has received a
weekly salary of at least $1,442.36.  Her total compensation,
including incentive compensation, was $83,354.14 in 2012 and
$81,103.29 in 2013.

Williams claims that GENEX was required to pay her for overtime.  She has sued GENEX under the federal Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 et seq., and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 et seq., for failing to pay her for the overtime hours that she worked.  GENEX contends that Williams is an "exempt employee" who is not entitled to overtime pay under the FLSA and MWHL.

By the instant motion, GENEX seeks summary judgment pursuant to Federal Rule of Civil Procedure 56.


II.  <u>SUMMARY JUDGMENT</u>

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could

return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

Thus, in order "[t]o defeat a motion for summary judgment, the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).  However, "self-serving, conclusory, and uncorroborated statements are insufficient to create a genuine issue of material fact."  Int'l Waste Indus. Corp. v. Cape Envtl. Mgmt., Inc., 988 F. Supp. 2d 542, 558 n.11 (D. Md. 2013); see also Wadley v. Park at Landmark, LP, 264 F. App'x 279, 281 (4th Cir. 2008).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

3

III.  <u>STATUTORY FRAMEWORK</u>

    A.    <u>General Overtime Wage Requirements</u>

    The Fair Labor Standards Act ("FLSA") "requires that employees be paid time and a half for work over forty hours a week." <u>Shockley v. City of Newport News</u>, 997 F.2d 18, 21 (4th Cir. 1993) (citing 29 U.S.C. § 207(a)(1)).  The Maryland Wage and Hour Law ("MWHL") has a similar overtime wage requirement. <u>See</u> Md. Code Ann., Lab. & Empl. §§ 3-415(a), 3-420(a).

    B.    <u>Exemptions</u>

    "The FLSA, and, by extension, the MWHL, exempt certain employees from the requirements of overtime wages, including employees in a bona fide . . . administrative, or professional capacity." <u>Drubetskoy v. Wells Fargo Bank, N.A.</u>, CIV. CCB-13-2196, 2013 WL 6839508 (D. Md. Dec. 20, 2013); <u>see also</u> 29 U.S.C. § 213(a)(1); Md. Code Ann., Lab. & Empl. § 3-403(1). "Professional capacity" and "administrative capacity" have the same meanings under the regulations governing the MWHL as they do under the FLSA regulations.  <u>See</u> Md. Code Regs. 09.12.41.01, 09.12.41.17.  Thus, an employee who qualifies for the professional or administrative exemption under the FLSA will also qualify for that exemption under the MWHL.

The FLSA exemptions "are affirmative defenses to an FLSA claim," and they must "be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960); Smith v. ABC Training Ctr. of Maryland, Inc., No. JFM-13-306, 2013 WL 3984630, at *9 (D. Md. Aug. 1, 2013).  The burden of proof is on the employer to establish "by clear and convincing evidence that an employee qualifies for exemption." Shockley, 997 F.2d at 21; see also Clark v. J.M. Benson Co., Inc., 789 F.2d 282, 286 (4th Cir. 1986).

How an employee spends her time working – i.e. what she does while at work – "is a question of fact." See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).  But, whether an employee's "particular activities excluded [her] from the overtime benefits of the FLSA is a question of law." Id. Thus, "[t]he determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question." Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 450 (4th Cir. 2004).

IV.   DISCUSSION

A.   GENEX

GENEX "is the nation's leading provider of integrated managed care services," and it seeks "to provide the highest quality disability management and medical cost-containment services in the industry."  Compl. ¶ 9; [Document 15-10] at 2. GENEX accomplishes this through case management, which is "the process of reeducating and re-adapting persons after they have suffered a disabling injury, disease, or disorder."  [Document 15-3] at 3.  Medical case management aims to "provid[e] the best medical care for the best long range effect for the ill/injured person at the most reasonable cost in the shortest amount of time."  Id. at 4.

GENEX employs medical case managers to act as the "coordinator[s] of medical care and service."  [Document 15-4] at 4.  A field medical case manager ("FMCM") works "in the field," rather than in an office.  FMCMs "assist the ill/injured person in an effort to reduce disability, medical expenses and extended unemployment."  Id.  An FMCM does not provide hands-on direct patient care, but instead is "[r]esponsible for assessment, planning, coordination, implementation and evaluation of injured/disabled individuals involved in the medical case management process."  Id.; [Document 20-5] at 2.

6

The GENEX Job Description states that an FMCM's duties include, inter alia:

> "Us[ing] clinical/nursing skills to help coordinate the individual's treatment program while maximizing cost containment;"
>
> "Serv[ing] as an intermediary to interpret and educate the individual on his/her disability, and the treatment plan established by the case manager, physicians, and therapists;"
>
> "Work[ing] with the physicians and therapists to set up medical assessments to develop an overall treatment plan;"
>
> "Research[ing] alternative treatment programs such as pain clinics, home health care, and work hardening;" and
>
> "May[be] provid[ing] testimony on litigated cases."

[Document 20-5] at 3. An FMCM also performs administrative duties such as "[p]repar[ing] detailed evaluation reports, as per account guidelines" and "[c]ompil[ing] a case inventory on a monthly basis for submission to the branch manager to allow for proper billing and to calculate hours for bonus purposes." Id. at 3-4.

GENEX requires that, at a minimum, FMCMs have: (1) a "[d]iploma, Associate or bachelor[']s degree in nursing or bachelor[']s degree (or higher) in a health or human services related field;" (2) a "[m]inimum of two (2) years . . . of direct clinical care to consumer;" and (3) a "[l]icensure or

7

certification in a health or human services discipline that
allows the professional to conduct an assessment independently."
Id. at 2-3.  An FMCM must be able "to set priorities" and "to
work independently."  Id. at 3.  The preferred / desired
qualifications for an FMCM include prior experience with case
management and rehabilitation services and one or more of the
various case manager certifications.  Id. at 2.

GENEX also requires that an FMCM have "state licenses /
certifications as required by law." Id. at 3.  The Maryland
Workers' Compensation Commission ("MWCC") requires a "worker's
compensation nurse case manager" to be a licensed Registered
Professional Nurse ("RN") and to have a Workers Compensation
Case Manager Certification from the Maryland Board of Nursing.
[Document 15-11] at 2.  Thus, pursuant to Maryland law, an FMCM
working for GENEX in Maryland must be a licensed RN.


B.   Williams

Williams began working for GENEX as an FMCM in 2011 when
GENEX acquired the assets of her former employer Intracorp.
Compl. ¶ 13; [Document 15] at 10 n.4.  Williams's "weekly salary
[as a FMCM at GENEX] was always at least $1,442.36."  Nussdorf
Dec. ¶ 5.  As of January 2014, Williams was receiving $1,489.85
per week.  In total, with incentive compensation factored in,

Williams earned $83,354.14 in 2012 and $81,103.29 in 2013.  Id.

Williams has two supervisors at GENEX – Andy Nussdorf ("Nussdorf"), Branch Manager for GENEX's Field Case Management Branch in Elkridge, Maryland, and Sofia Harris ("Harris"), Case Management Supervisor for GENEX's Elkridge Office.  Williams testified at her deposition, taken on November 5, 2013, that she last saw Nussdorf over two years earlier in September 2011 and that she last saw Harris over a year earlier in the Summer of 2012.  Williams Dep. 134:3-12.  Williams also stated that she has "irregular" phone contact with her supervisors and that a month can pass without her speaking to them.  Id. 134:13-22.

Williams received a Diploma in Nursing from the Toledo Hospital School of Nursing in Toledo, OH in 1983 and a Bachelor of Science in Nursing from Villa Julie College (n/k/a Stevenson University) in Stevenson, MD in 2007.  Id. 66:11-68:10.  At all relevant times hereto, Williams has been an RN licensed in the State of Maryland.  [Document 15-8] at 3.  As of January 2014, she was listed as a Registered Nurse Case Manager with the MWCC. [Document 15-13] at 4.  Williams has several professional certifications, including Certified Case Manager, Certified Disability Management Specialist, Certified Life Care Planner, and Medicare Set-aside Consultant.  Williams Dep. 71:10-72:9. Prior to her employment with Intracorp / GENEX, Williams worked

for roughly 17 years at Rehabilitation Management Services, LLC in Columbus, Ohio as a "Catastrophic Case Manager / Life Care Planner / Expert Witness." [Document 15-8] at 2.

On a résumé[1] that she provided to Nussdorf sometime between 2011 and 2012, Williams described her position at GENEX as "Case Manager / Life Care Planner / Expert Witness." Id. Her résumé states that as an FMCM at GENEX, Williams:

> Serve[s] as case manager for multidisciplinary files assessing patient needs, designing research-driven life care plans, and coordinating delivery of care. Oversee[s] medical record reviews, extensive client interview process, collaboration with the treatment team, data analysis, and research to protect current and long-term

---

[1]    At her deposition, Williams contested the accuracy of certain parts of her résumé and speculated that someone had "edited" the document. She stated that "there are some things on here that are either missing or that have been added or that are inaccurate." Williams Dep. 289:15-17. Specifically, she stated that (1) there were big, blank areas with no type under certain sections, (2) she no longer had current nursing licenses in Ohio or California, and (3) the list of her volunteer efforts and community work was incomplete. Id. 286:8-14, 287:5-22, 288 289:1-2. Williams also testified that she does not have a Master of Science in Nursing degree ("MSN"), had never started an MSN program, and had never even applied to Case Western University. Id. 286:15-287:5. However, on the version of her résumé that she submitted when she applied for the FMCM job in 2010, Williams noted that she would complete an MSN from Case Western in 2011, not in 2013, the year listed on the more recent version of the résumé. See [Document 15-6] at 4; [Document 15-8] at 3. Further, the Qualifications Summary of the résumé states that Williams is "near-completion of [an] MSN." [Document 15-8] at 2. Williams verified that the rest of her résumé was accurate. Williams Dep. 289:3-9 ("Q. Anything else inaccurate in this document? . . . A. I don't believe so. I mean – No.").

> medical needs and their economic impact. Coordinat[es] case management initiatives in concert with providers. Develop[s] strong professional relationships through proactive communication and coalition-building, facilitating life care planning, trust management, litigation support.

Id.

On at least one occasion, Williams held herself out to an injured employee as a nurse, writing in an email, "I am a nurse with GENEX Services Inc. and I have been ask[ed] to visit with you to address your current needs." [Document 15-32] at 4. Further, the signature that Williams uses when she sends email messages to injured employees lists her academic and certification credentials and represents her employment title as "Catastrophic Nurse Case Manager." Id.


C.   Learned Professional Exemption

As discussed herein, GENEX is entitled to summary judgment by virtue of the "learned professional exemption."[2] To establish that Williams is a "learned professional," GENEX must establish that: (1) Williams is "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week" and (2) her "primary duty [is] the performance of work requiring advanced knowledge in a

---

[2]   The other professional exemptions apply to creative professionals (29 C.F.R. § 541.302), teachers (29 C.F.R. § 541.303), and certain individuals engaged in the practice or law or medicine (29 C.F.R. § 541.304).

field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  29 C.F.R. §§ 541.300(a), 541.301(a).

### 1.   Compensation Rate

There is no doubt that, at all times, Williams has earned well over $455 per week.[3]  See Nussdorf Dec. ¶ 5 ("In 2013, [Williams's total compensation] was $81,103.29.").

### 2.   Primary Duty Test

To satisfy the "primary duty" test for the learned professional exemption, GENEX must establish that Williams:

1. "perform[ed] work requiring advanced knowledge;"

2. "in a field of science or learning;"

3. that is "customarily acquired by a prolonged course of specialized intellectual instruction."

---

[3]   The United States Court of Appeals for the Fourth Circuit has stated that when an employee receives a high salary, the "high salary itself creates doubt as to whether [the employee] falls within the scope of the intended protected class in light of the legislative goals of the FLSA." See Altemus v. Fed. Realty Inv. Trust, 490 F. App'x 532, 537 (4th Cir. 2012) (employee's salary was over $90,000); see also Darveau v. Detecon, Inc., 515 F.3d 334, 338 (4th Cir. 2008) ("Darveau's annual compensation of $150,000 satisfies the salary requirement.  Although salary alone is not dispositive under the FLSA, we note that the 'FLSA was meant to protect low paid rank and file employees . . . .'" (citation omitted)).

12

29 C.F.R. § 541.301(a).

a.  Field of Science Customarily Acquired by a
    Prolonged Course of Study

"Registered nurses who are registered by the appropriate

State examining board generally meet the duties requirements for

the learned professional exemption."[4]  29 C.F.R. § 541.301(e)(2).

There is no dispute that Williams is a licensed RN and that she

was required to be an RN to work for GENEX in Maryland as an

FMCM.[5]  Thus, Williams satisfies the second and third prongs of

the "primary duty" test – she has advanced knowledge in a field

of science that is customarily acquired by a prolonged course of

study. See Rieve v. Coventry Health Care, Inc., 870 F. Supp. 2d

856, 862 (C.D. Cal. 2012) ("It is undisputed that Plaintiff is a

registered nurse and that she was required to be a registered

---

[4]    "Licensed practical nurses and other similar health care
employees, however, generally do not qualify as exempt learned
professionals because possession of a specialized advanced
academic degree is not a standard prerequisite for entry into
such occupations."  29 C.F.R. § 541.301(e)(2).

[5]    Williams places great emphasis on the fact that GENEX does
not require an FMCM to be a licensed RN.  See [Document 20] at
6; [Document 20-5].  However, the GENEX Job Description for an
FMCM states that an FMCM must have "state licenses /
certifications as required by law," and the MWCC requires a
worker's compensation nurse case manager in Maryland to be a
licensed RN. [Document 15-11] at 2; [Document 20-5] at 3.
Whether the requirement that an FMCM be a licensed RN was
imposed by GENEX or by the State of Maryland is immaterial
because the fact remains that Williams cannot work for GENEX in
Maryland as an FMCM without being a licensed RN.

nurse to work as a[ Field Case Manager—Medical Workers'
Compensation].  Plaintiff has thus satisfied the second and
third prongs of the duties test . . . ." (internal citation
omitted)); Powell v. Am. Red Cross, 518 F. Supp. 2d 24, 39
(D.D.C. 2007) ("[A]s a registered nurse, plaintiff . . .
satisfy[ies] the second and third elements of the primary duty
test.").

However, GENEX must establish that Williams's primary duty
involves the performance of work requiring her advanced
knowledge of nursing.  See Rieve, 870 F. Supp. 2d at 862 ("The
mere fact that Plaintiff is a registered nurse, however, does
not end the Court's inquiry.").  As the United States District
Court for the District of Columbia has stated:

> Although the Court is unaware of any case in
> which a registered nurse has been found not
> to satisfy the primary duty test, the
> [presumptive exemption for registered
> nurses] is not necessarily dispositive of
> the first element of that test, i.e.,
> whether a particular nursing position has as
> its primary duty the performance of work
> requiring advanced knowledge.

Powell, 518 F. Supp. 2d at 39.

### b.   Work Requiring Advanced Knowledge

To determine whether Williams is exempt from the FLSA and
MWHL overtime wage requirements as a learned professional, GENEX
must establish the first prong of the "primary duty" test – i.e.

that Williams's "primary duty" involves "the performance of work requiring [her] advanced knowledge" as a licensed RN.  See 29 C.F.R. § 541.301(a)(1).

An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs."  Id. § 541.700(a).  The "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  Id. § 541.700(a).

"[W]ork requiring advanced knowledge" is defined as:

> work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work.  An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances. . . . .

Id. § 541.301(b).

GENEX contends that Williams's primary duties involve work requiring advanced knowledge because as an FMCM, Williams is required "to critically analyze and synthesize an injured worker's medical condition and care options" and "to make recommendations and take actions to advance the case." [Document 15] at 37.  Williams argues that she is not required to use advanced knowledge as an FMCM because she "complete[s]

15

tasks through strict compliance with procedures and protocols" and "exercise[s] minimal discretion and independent judgment." [Document 20] at 30.

In Rieve v. Coventry Health Care, Inc., 870 F. Supp. 2d 856 (C.D. Cal. 2012), the plaintiff was a licensed RN who worked as a Field Case Manager—Medical Workers' Compensation ("FCM-Med"). She sued the defendant, a medical-cost containment company, for classifying her as exempt from the FLSA overtime wage requirement.[6] Id. at 859.  The Rieve court stated that:

> Despite the parties' varied interpretations of the nature of Plaintiff's duties, a close analysis shows that the substance of her tasks is actually undisputed. . . . When it comes to the substance of Plaintiff's tasks, the parties differ only in their vocabulary. . . .
>
> Plaintiff's job duties were undisputedly "to provide ongoing, day-to-day case management services for Defendants' customers by documenting the costs of care, preparing reports regarding a plan of care, and identifying and implementing medical services to meet the needs of Defendants' customers."  Plaintiff explains that she monitored and reported whether patients were receiving medical services in accordance with the medical orders issued by the attending physician, although it was the physicians who had the decision-making power to order a course of treatment and the

---

[6]    The plaintiff in Rieve v. Coventry Health Care, Inc. also brought claims under the California Labor Code, but the California professional exemption – unlike Maryland's exemption – is not coextensive with the scope of the federal exemption. See 870 F. Supp. 2d 856, 866-67 (C.D. Cal. 2012).

> claims adjusters who had the power to
> eliminate such treatment. . . . Plaintiff
> explains that FCMs do not make decisions
> about reducing costs but "only document
> 'achieved cost savings' in Defendants'
> CMD/Win program which is an 'inflexible'
> system comprised of preformatted templates."

Id. at 859-60. The court concluded that the plaintiff

"satisfies the 'advanced knowledge' prong of the duties test,"

reasoning that "[t]he evidence demonstrates that Plaintiff's

work was advanced beyond the level of a clerical worker" and

that "Plaintiff did not merely input routine data but engaged in

activities that demonstrate she is a skilled health care

professional." Id. at 863-66.

Williams's duties as an FMCM for GENEX are almost identical

to those of the plaintiff in Rieve.[7] Williams concedes in her

Response to GENEX's Motion that her job tasks include:

> meeting with clients in their homes,
> physician's or therapist's offices and/or
> work sites; interviewing clients; reviewing
> a client's pre-injury and/or pre-illness
> position; making appointments with a
> client's physician or therapist; listening
> to and reviewing the physician's or
> therapists diagnosis; obtaining
> prescriptions; communicating both in-person
> and by telephone with clients, employers,
> medical providers, attorneys, insurance
> carriers and claims adjusters; applying all

---

[7]   One distinction is that in Rieve, the defendant required
the plaintiff to be a licensed RN to work as an FCM-Med, whereas
here, the RN requirement for an FMCM is a product of Maryland
law. However, as discussed supra, it is immaterial whether the
RN requirement is a product of GENEX's policies or of state law.

> special instructions required by individual
> insurance carriers and referral sources;
> following all pre-established and required
> case management plans; preparing reports and
> other required paperwork to document all
> casework activities; meeting weekly billing
> requirements; operating office machines;
> accessing filing cabinets; and attending
> staff meetings, workshops, and/or training
> programs.

[Document 20] at 8-9 (emphasis added). Seeking to create a factual issue, Williams labels these duties as "a finite set of clerical tasks." Id. at 8. However, this is insufficient to avoid summary judgment when there is no genuine issue of material fact as to the substance of Williams's duties as an FMCM. Cf. Rieve, 870 F. Supp. 2d at 859-60, 865-66.

In Withrow v. Sedgwick Claims Mgmt. Serv., Inc., 841 F. Supp. 2d 972 (S.D.W. Va. 2012), the court determined that a telephonic case manager for an insurance claims administrator qualified as a learned professional.[8] The plaintiff in Withrow was a licensed RN who first "was employed by [the defendant] as a utilization review nurse [but] also assumed duties as a telephonic case manager." Id. at 974, 986. The court observed that as a telephonic case manager, the plaintiff "helped

---

[8]   Withrow v. Sedgwick Claims Mgmt. Serv., Inc., 841 F. Supp. 2d 972 (S.D.W. Va. 2012), also dealt with claims of other plaintiffs who were employed as claims examiners by the defendant. However, the decision reached by the Withrow court as to the applicability of the administrative exemption to claims examiners does not affect the Court's analysis of the learned professional exemption in the instant case.

18

patients return to work, . . . communicated directly with
employers to address workplace accommodations[, and i]n addition
to speaking with claimants about workplace issues, [she]
discussed what they should expect from their condition and
treatment[ and] sometimes act[ed] as a go-between for patients
and their providers." Id. at 987.  The court concluded that the
plaintiff's position as a telephonic case manager also qualified
her for the learned professional exemption,[9] reasoning that the
"medical knowledge enabled her to examine claimants' conditions
and provide advice on what to expect from treatments."  Id. at
987.

"This Court is not aware of any case, nor do[es Williams]
cite to any case, in which a case manager or a registered nurse
in any position has not been deemed a professional exempt from
FLSA coverage."  Rieve, 870 F. Supp. 2d at 864.

Like the plaintiff in Rieve,[10] Williams "deals with
extremely individualized results—a care plan for each of her
patients," which involve "decisions [that] are fact-specific and
tailored to each of her patient's individual situations."  Id.
at 865.  Further, like the plaintiff in Withrow, Williams uses

---

[9]      The Withrow court first determined that the plaintiff's
position as a utilization review nurse qualified her for the
learned professional exemption.  See id. at 987.
[10]      Despite GENEX's reliance on Rieve in its Motion for Summary
Judgment, Williams neither mentions Rieve in her Response, nor
attempts to distinguish it from the instant case.

her advanced knowledge to examine injured employees' medical conditions and advise them on what to expect.

Williams represents to GENEX clients that she believes she is "pretty good [a]t challenging cases" and has requested large, complex cases.  <u>See</u> [Document 15-16] at 2; [Document 15-7] at 2 ("what i want . . . Are some big fat messed up cases . . . . ").

The comments that Williams includes in her case progress reports indicate that she not only analyzes assesses and analyzes claimants' medical conditions, but also provides her own commentary and suggestions.  For example, on an injured employee's progress report, Williams made the following notes:

> 9/30/2013  <u>I would encourage</u> getting the consent and obtaining all records then looking into the presenting lab values at shock trauma [hospital] to see what his Blood sugars were on admission – <u>this could potentially be the etiology</u> for the fall.

> 10/3/2013  <u>Claimant</u> walks cautiously and seems a bit unsure of him.  His color was good and he conversed clearly and <u>was oriented without deficit</u>.  <u>He presented with a phlebitis on the left hand</u> from an IV site placed at one of his hospitalizations . . . .

> 10/3/2013  A brief neurological exam was completed which appeared normal however <u>the doctor asked for claimant to be seen by a Neurologist for further – more sophisticated assessment</u>. . . . <u>I</u>

> <u>suggested considering Sinai as
> they have excellent specialists</u>
> an[d] all parties agreed.

> 10/3/2013    Claimant was cleared to drive
> only short distances – "around
> the corner" but <u>I cautioned them
> heavily</u> about even that as [b]y
> the time the appointment was over
> he looked glossed over – somewhat
> confused and clearly overwhelmed.

[Document 15-21] at 8-10 (emphasis added).

The evidence establishes that Williams is not closely
supervised and that she regularly exercises discretion and
judgment as an FMCM.  Williams testified that she had not seen
either one of her supervisors in over a year and that she
infrequently speaks with them by telephone.  She also stated
that she provides input into the process of trying to help
injured employees return to work.  <u>See</u> Williams Dep. 114:12-22
("Q. Do you provide your input into those decisions? . . . A. As
it relates to the document that I have. Yes."); <u>see also</u> <u>id.</u>
338:9-13 ("Q. So you provide input into the process as we've
talked about today, right? Recommendations, education,
suggestions that may or may not be followed.  A. At times.").

Finally, Williams provides additional follow up and
recommendations when she feels that a particular case warrants
such actions.  <u>See</u> [Document 15-25] at 2 ("I advised Risk
Management at the Hospital needs to become involved in this case

21

ASAP—needs Hospitalist and Neuro consults as well—will address
ASAP and get back to me.  Very worried about this gentleman—will
reach out to the wife again and probably go see her over the
weekend if okay with [the insurance adjuster].").

Williams contends that she does not exercise discretion and
judgment because she "does not have the power or discretion to
alter that course of treatment."  [Document 20] at 35.  The
court in Rieve faced a similar argument when the plaintiff
pointed out that she did not have the power to order the
imposition or elimination of medical treatment or to override or
modify the decisions of claims adjusters.  The Rieve court
responded that "even though Plaintiff existed in a hierarchy,
she was clearly still required to exercise independent judgment
and discretion in the course of her duties" because "[l]ike a
registered nurse in practice, [the plaintiff] interacted with
physicians and patients and provided skilled advice, despite the
fact that she did not have the authority to order or alter any
course of treatment herself."  Rieve, 870 F. Supp. 2d at 864.
Likewise, here, even though Williams does not have ultimate
decision-making power as to an injured employee's treatment or
care plan, she still uses her discretion and judgment to
evaluate cases and make recommendations for future courses of
action, much like a licensed RN engaged in direct patient care.

Williams contends that a lay person – _i.e._ a non-nurse – could do her job because "GENEX provides [FMCMs] with a host of templates with which they prepare various reports and letters." [Document 20] at 8.  She argues that when she writes reports, she is "nothing more than a scribe relaying information back." _Id._ at 12.

However, the report writing instructions[11] for FMCMs refute this argument.  Although the instructions state that standard report templates exist and "cannot be changed," they also state that "[e]ach report should be unique" because the "customer does not want a regurgitation of information they already have." [Document 15-18] at 2, 5.

Further, Nussdorf testified that no more than 10 percent of the time Williams spends working on a case is spent writing evaluation reports.  The other 90 percent of the time is spent on a variety of tasks that include meeting and communicating with the doctors, physical therapists, and/or injured employee. _See_ Nussdorf Dep. 93:12-94:10.  Thus, even assuming that report writing is the action of a "mere scribe," such a task takes up only 10 percent of Williams's time, which is not sufficient to have the alleged clerical work qualify as Williams's primary duty.  _See_ 29 C.F.R. § 541.700(b) ("The amount of time spent

---

[11]    From a manual originally produced by Intracorp.

performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement.").

Williams has produced only her own self-serving opinion testimony to refute the evidence presented by GENEX that as an FMCM, Williams's primary duty involves the performance of work requiring her advanced knowledge in the nursing field. For example, Williams testified that she does not perform the exact duties upon which her Performance Evaluation is based. Williams Dep. 295:14-296:5 ("Q. Is there any other criteria in this document that you believe are not appropriate for the evaluation of the field case manager based on what you actually do on a day-to-day basis? A. . . . I don't think it's an accurate reflection of what we really do."). However, this is not sufficient to provide evidence from which a reasonable jury could find against GENEX in regard to the substance of Williams's duties as an FMCM. Cf. Wadley v. Park at Landmark, LP, 264 F. App'x 279, 281 (4th Cir. 2008) ("[Plaintiff's] own self-serving, unsubstantiated statements in opposition to [his former landlord's] evidence [that the plaintiff was not discriminated against] is insufficient to stave off summary

judgment."); <u>Wilson v. Circuit City Stores, Inc.</u>, 81 F.3d 153 (4th Cir. 1996) ("Wilson produced only his own self-serving testimony to substantiate the claim that other managers had the same poor performance record as Wilson, but were not disciplined. . . . The second element of Wilson's prima facie case of disparate discipline thus stands wholly unsupported.").

Accordingly, any reasonable fact finder would have to agree with GENEX that Williams "exercised independent judgment and was engaged in non-clerical work, such that her primary duties require 'advanced' knowledge that satisfies the duties test for the FLSA [and MWHL] professional exemption[s]."[12]  <u>Rieve</u>, 870 F. Supp. 2d at 863.

---

[12]    Because the Court has determined that Williams is exempt from the overtime wage requirements of the FLSA and the MWHL under the learned professional exemption, the Court "need not address the merits of [GENEX]'s administrative exemption" and combination exemption arguments.  <u>Rieve</u>, 870 F. Supp. 2d at 866. Further, in light of the decision to grant summary judgment to GENEX on the learned professional exemption, the Court also need not address GENEX's spoliation contentions.

V.    <u>CONCLUSION</u>

For the foregoing reasons:

    1.    Defendant's Motion for Summary Judgment with Regard to the Claims of Plaintiff Nancy A. Williams [Document 14] is GRANTED.

    2.    Judgment shall be entered by separate Order.

SO ORDERED, on <u>Thursday, September 4, 2014</u>.


                                 /s/_____  ___ _
                                     Marvin J. Garbis
                       United States District Judge